# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Appeal No. 22-1027

---

MARIO CRUZADO,

Petitioner-Appellant,

v.

NELSON ALVES, Superintendent of MCI Norfolk,

Respondent-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

Case No. 1:18-cv-12361-DJC
The Honorable Denise J. Casper

---

## REPLY BRIEF OF PETITIONER-APPELLANT MARIO CRUZADO

---

Emma Quinn-Judge (1st Cir. #1138229)
Thomas Miller (1st Cir. #1207777)
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
equinn-judge@zalkindlaw.com
tmiller@zalkindlaw.com

August 25, 2023

# Table of Contents

Introduction...................................................................................1

Argument......................................................................................2

    I.    This Court Has Jurisdiction To Hear Cruzado's Appeal ...............2

    A. The District Court's November 3, 2021, order was not a final order.......................................................................................3

    B. Cruzado's motion for an extension of time contained all the information needed to make it the functional equivalent of a notice of appeal .................................................................................6

    C. That Cruzado was no longer pro se at the time of the motion for extension of time should not deprive him of the liberal construction of Rule 3.......................................................10

    II.    The Writ of Habeas Corpus Should Issue ......................................12

    A. The Supreme Judicial Court unreasonably applied federal law on due process ...................................................................13

    B. The Commonwealth ignores the unique factual circumstances, including the total absence of forensic evidence, that made the admission of the recording have a substantial and injurious effect or influence on the jury's verdict ....................................19

    C. Cruzado's arguments were not waived ....................................24

Conclusion .................................................................................27

Certificate of Compliance......................................................27

# Table of Authorities

## Cases

*Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) ..................... 15

*Bailey v. Cain*, 609 F.3d 763 (5th Cir. 2010) ........................................... 7

*Bell v. Mizell*, 931 F.2d 444 (7th Cir. 1991) ........................................... 11

*Brecht v. Abrahamson,* 507 U.S. 619 (1993) ............................... 13, 20, 23

*Brown v. Davenport*, 142 S. Ct. 1510 (2022) .......................................... 25

*Campiti v. Matesanz*, 333 F.3d 317 (1st Cir. 2003) ............................. 6, 9

*Catlin v. United States*, 324 U.S. 229 (1945) ........................................... 4

*Commonwealth v. Cruzado*, 480 Mass. 275 (2018)...................... 1, 14, 19

*Coningford v. Rhode Island*, 640 F.3d 478 (1st Cir. 2011) .............. 13, 19

*DeLong v. Dickhaut,* 715 F.3d 382 (1st Cir. 2013).................................... 8

*Fid. Co-op. Bank v. Nova Cas. Co.*, 726 F.3d 31 (1st Cir. 2013)............. 25

*Foxworth v. St. Amand*, 570 F.3d 414 (1st Cir. 2009) ............................ 23

*Gomes v. Silva*, 958 F.3d 12 (1st Cir. 2020)............................................ 14

*Harris v. Ballard*, 158 F.3d 1164 (11th Cir. 1998) ................................... 9

*Lyons v. Brady*, 666 F.3d 51 (1st Cir. 2012) ........................................... 14

*Maine Green Party v. Maine, Sec'y of State*, 173 F.3d 1 (1st Cir. 1999)
................................................................................................25, 26

*Mass. Ass'n for Retarded Citizens v. King*, 643 F.2d 899 (1st Cir. 1981)
..................................................................................................4

*McKinney v. Rees*, 993 F.2d 1378 (9th Cir. 1993) ................................... 15

*McLemore v. Landry*, 898 F.2d 996 (5th Cir. 1990) ................................. 8

*McMillan v. Barksdale*, 823 F.2d 981 (6th Cir. 1987) ........................... 10

*Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022 (9th Cir. 1998)
.............................................................................................................. 16

*Moore v. Marr*, 254 F.3d 1235 (10th Cir. 2001) ..................................... 12

*Ortberg v. Moody*, 961 F.2d 135 (9th Cir. 1992) .................................... 11

*Payne v. Tennessee*, 501 U.S. 808 (1991) ................................................. 13

*People v. Mena*, 71 A.D.3d 475, 897 N.Y.S.2d 57 (2010) ........................ 17

*People v. Quartermain*, 16 Cal. 4th 600, 941 P.2d 788 (1997) .......... 16, 17

*Rivera v. Thompson*, 879 F.3d 7 (1st Cir. 2018) ..................................... 19

*Rodgers v. Wyoming Att'y Gen.*, 205 F.3d 1201 (10th Cir. 2000) ........... 11

*Smith v. Barry*, 502 U.S. 244 (1992) ............................................. 6, 10, 12

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir. 2001) .............. 16

*Thomas v. Morton Int'l, Inc.,* 916 F.2d 39 (1st Cir. 1990) ....................... 9

*Tinsley v. Borg*, 895 F.2d 520 (9th Cir. 1990) ........................................ 10

*United States v. Gooch*, 842 F.3d 1274 (D.C. Cir. 2016) ........................... 8

*United States v. Wells*, 879 F.3d 900 (9th Cir. 2018) ............................. 15

*Wells v. Ryker*, 591 F.3d 562 (7th Cir. 2010) ..................................... 8, 11

**Statutes**

28 U.S.C § 2254. ........................................................................... 14, 24

28 U.S.C.§ 2253 ................................................................... 3

**Other Authorities**

Mass. G. Evid. § 801 ......................................................... 14

**Rules**

1st Cir. R. 22.0 ................................................................... 4, 5

Fed. R. App. P. 3 .......................................................... 3, 6, 9, 10

Fed. R. Evid. 403 ............................................................... 15

Rule 11 of the Rules Governing Section 2254 Cases ........................... 4, 5

## Introduction

Petitioner-Appellant Mario Cruzado was sentenced to life in prison after a trial rendered fundamentally unfair by the erroneous admission of part of a recorded police interview in which he used the n-word. Prosecutors exploited this recording to present Cruzado to the jury as a racist, thereby injecting race into a case from which it was otherwise absent. The prosecution's resort to this improper tactic was understandable, because the government's case was weak: there was a plausible third-party culprit and no forensic evidence linked Cruzado to the crime scene.

Cruzado presented his argument that the admission of the unredacted recording violated his due process rights in his direct appeal before the Supreme Judicial Court (SJC), the highest court of Massachusetts. *See Commonwealth v. Cruzado*, 480 Mass. 275 (2018). The SJC rejected his argument, in a patently unreasonable application of clearly established federal law. Cruzado then sought the writ of habeas corpus in federal court, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The District Court also

rejected his argument but granted him a certificate of appealability (COA) to pursue his claim before this Court.

The Commonwealth's response to Cruzado's appeal studiously ignores both the unique features of his case (including the striking lack of forensic evidence—in a trial in 2012, concerning events in 2010) and the poisonous power of the n-word to cause offense and prejudice the jury against him. The Commonwealth instead attempts to find reasons why this Court should not consider the merits, arguing that Cruzado did not file a proper notice of appeal or that his arguments under AEDPA were waived. As discussed below, these arguments fail. This Court should hold that it has jurisdiction to consider the merits of Cruzado's case, and it should grant him the writ of habeas corpus.[1]

## Argument

### I.    This Court Has Jurisdiction To Hear Cruzado's Appeal

This court has jurisdiction to hear Cruzado's appeal of the denial of his petition for habeas corpus by the District Court. His notice of

---

[1] References to the principal brief of Petitioner-Appellant Cruzado appear as (PB __); references to the brief of the Respondent-Appellee (the Commonwealth) appear as (RB __). References to the trial transcripts appear as (T_:_), including volume and page number.

appeal, filed on January 4, 2022, was timely, given that the "final order" that this Court has jurisdiction to review under 28 U.S.C.§ 2253(a) was issued that same day. The District Court's earlier order on November 3, 2021, denying Cruzado's petition, was not a "final order" because it did not decide appealability and in fact expressly invited briefing on whether to issue a COA. In the alternative, Cruzado's earlier motion for extension of time to brief appealability was the functional equivalent of a notice of appeal, because it contained all the information required by Rule 3 of the Federal Rules of Appellate Procedure. This Court should reject the Commonwealth's invitation to subject Cruzado to an artificially stringent reading of Rule 3 because he was no longer pro se when his motion for extension of time was filed.

## A. The District Court's November 3, 2021, order was not a final order

The District Court's order on November 3, 2021, denying a writ of habeas corpus, did not trigger Cruzado's obligation to file a notice of appeal because the order was not a "final order" from which appeal could be taken. *See* 28 U.S.C.§ 2253(a) ("In a habeas corpus proceeding or a proceeding . . . before a district judge, the final order shall be subject to review, on appeal, by the court of appeals"). A "final order" is

"one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Mass. Ass'n for Retarded Citizens v. King*, 643 F.2d 899, 904 (1st Cir. 1981) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

Indeed, Rule 11(a) of the Rules Governing Section 2254 Cases [hereinafter "Habeas Rules"] and First Circuit's Local Rule 22.0(a) both explicitly require that the "final order" in a habeas case be one that decides appealability. The Commonwealth's analysis ignores both rules. The Commonwealth never explains how the District Court's November 3 order could constitute a "final order" in a habeas case without complying with the requirement to decide appealability. *See* Habeas Rules, Rule 11(b) (court must decide appealability "when it enters a final order"); 1st Cir. R. 22.0(a) (judge must "rule on the issuance of a certificate of appealability when a final order issues"). (*Cf.* RB 13 n.3 (demanding case law, while ignoring the existence and plain text of both rules).) Notably, the Commonwealth does not argue that the November 3 order should be construed as having decided appealability or having denied a COA, thereby complying with these rules. Rather, the Commonwealth, like Cruzado, reads the November 3 order as leaving

4

the question open: the court "indicated that it was disinclined to grant a COA." (RB 20.)

Both parties thus agree that the District Court's November 3 order left open the question of appealability. The court gave Cruzado thirty days to brief the issue. This manner of proceeding is explicitly contemplated by Rule 11(a) of the Habeas Rules, which states that "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The Commonwealth also ignores this portion of the Habeas Rules. The issuance of a routine one-sentence "Order of Dismissal" by the clerk, on the same day as and "in accordance with" the Court's November 3 order, does not change the fact that under the Court's own rules no "final order" for habeas purposes had issued. (Add. 19.)

No final order—under the Habeas Rules or Local Rule 22.0(a)— therefore issued until January 4, 2022, when the District Court made its final decision to grant the certificate of appealability.[2] Cruzado's notice of appeal, filed the same day, was thus timely.

---

[2] Cruzado's District Court counsel apparently shared this understanding. In response to this Court's order to show cause why

## B. Cruzado's motion for an extension of time contained all the information needed to make it the functional equivalent of a notice of appeal

In the alternative, Cruzado's motion for an extension of time to brief the certificate of appealability issue contained all the information needed to make it the functional equivalent of a notice of appeal under Rule 3. *See Smith v. Barry*, 502 U.S. 244, 248 (1992) (courts should "liberally construe" requirements of rule and may accept papers that are "functional equivalent" of what rule requires); *Campiti v. Matesanz*, 333 F.3d 317, 320 (1st Cir. 2003). The relevant parties were named in the caption, and the motion left no doubt about the order that was being appealed, the court to which the appeal would be taken, and Cruzado's intent to appeal. *See* Fed. R. App. P. 3(c) (listing required information).

The order being appealed was clear. The only substantive decision in the District Court when Cruzado his motion for extension of time on November 30 was the denial of the habeas petition on November 3.

_____

Cruzado's appeal should not be dismissed as untimely, prior counsel responded that she "believed that no Notice of Appeal could be filed until a certificate of appealability had been issued, therefore, she did not file a Notice of Appeal from the denial of Cruzado's Petition until such time as the certificate of appealability was issued." If a highly-experienced attorney appointed for Cruzado by order of this Court could be uncertain about this issue, Cruzado should not be penalized for it.

There was nothing else to appeal from at that point. Furthermore, Cruzado's motion for extension of time specifically referenced and sought to modify the December 3 deadline set in the November 3 order. (Add. 17, App. 105.) The reference to this specific deadline also tied the motion directly to the November 3 order.

*Bailey v. Cain*, 609 F.3d 763, 766-67 (5th Cir. 2010), relied upon by the Commonwealth (RB 20, 21), is not only an outlier in the case law but is distinguishable on the facts. There the Fifth Circuit refused to accept a motion for extension of time to request a certificate of appealability as the functional equivalent of a notice of appeal, in part because the motion lacked *any* reference to a particular judgment or order from which the appeal was being taken—in a case where four different orders and a final judgment had been entered in the District Court. *Id.* at 765 n.1, 767. Here, by contrast, there was only one order from which to appeal, and Cruzado's motion for extension of time alluded to it.

The Commonwealth also argues that Cruzado's motion did not include the name of the court to which the appeal would be taken. But "failures to meet this requirement are excused where there is only one

court to which the appeal can be taken, which is the case here." *United States v. Gooch*, 842 F.3d 1274, 1277 (D.C. Cir. 2016); *see McLemore v. Landry*, 898 F.2d 996, 999 (5th Cir. 1990) (concluding that "intent to appeal to this court is made manifest by the fact that this is the only court to which an appeal may be had"); *Wells v. Ryker*, 591 F.3d 562, 565 (7th Cir. 2010) ("[T]he term 'certificate of appealability' necessarily refers to an appeal to the relevant court of appeals."). [3]

Examined "in the context of the record as a whole," the motion clearly indicates Cruzado's intent to appeal. *See DeLong v. Dickhaut*, 715 F.3d 382, 386 (1st Cir. 2013) (intent to appeal dismissal of habeas petition plain from notice of appeal that only "indirectly referenced" dismissal and sought to appeal denial of earlier motion in case). The sole reason to seek a certificate of appealability is to pursue an appeal. Seeking an extension of time to file a certificate of appealability is thus distinct from merely seeking an extension of time to file a notice of appeal. A notice of appeal requires no briefing—thus temporizing about

---

[3] While *Wells*, which involved a petitioner represented by counsel, was cited for precisely this point in Cruzado's opening brief (PB 23), the Commonwealth makes no effort to distinguish it or to explain why its logic is not on point.

a simple notice suggests uncertainty about whether to appeal, leading courts to conclude that seeking such an extension is not the equivalent of a notice of appeal. *See Harris v. Ballard*, 158 F.3d 1164, 1166 (11th Cir. 1998); *Thomas v. Morton Int'l, Inc.*, 916 F.2d 39, 40 (1st Cir. 1990) (per curiam). Here, by contrast, Cruzado's counsel sought a short extension of time to provide the briefing requested regarding a certificate of appealability. This action clearly "evince[d] an intention to appeal." *Campiti*, 333 F.3d at 320. Thus all information required for a notice of appeal under Rule 3 was present.

"Whether a particular type of document is the functional equivalent of a notice of appeal may depend on its content and surrounding circumstances rather than any general rule." *Id*. at 320.[4] Not only did the motion provide all necessary content, but the surrounding circumstances—including both the fact that the District Court did not decide appealability in its order denying habeas and prior counsel's understanding of what was required as a result of that order—weigh in favor of a liberal construction of Rule 3. Thus reviewing both the motion

---

[4] The Commonwealth slightly reframes this standard, reinterpreting it as a "*totality* of the circumstances" framework. *Cf*. RB 19-20.

and its context, this Court should conclude that Cruzado's motion for an

extension of time to brief appealability was the functional equivalent of

a notice of appeal.

## C. That Cruzado was no longer pro se at the time of the motion for extension of time should not deprive him of the liberal construction of Rule 3

The fact that Cruzado—who is incarcerated for life, and whose

original habeas petition was filed pro se—had been appointed counsel

by the time the motion for an extension of time was filed should not

deprive him of the benefit of the liberal construction of Rule 3 mandated

by the Supreme Court. *See Smith*, 502 U.S. at 248. The original

advisory note to Rule 3 "expressly approves 'a liberal view of papers

filed by indigent and incarcerated defendants,'" without making

mention of whether they have counsel. *See McMillan v. Barksdale*, 823

F.2d 981, 983 (6th Cir. 1987) (quoting 1967 general advisory note to

Fed. R. App. P. 3). Three other Circuits have accordingly held that

whether a habeas petitioner is represented by counsel makes no

difference in this regard.

In *Tinsley v. Borg*, 895 F.2d 520, 523 (9th Cir. 1990), the Ninth

Circuit held that a certificate of probable cause (the pre-AEDPA

equivalent of a certificate of appealability) submitted by a pro se petitioner could also play the role of a notice of appeal. Two years later, in *Ortberg v. Moody*, 961 F.2d 135, 137 (9th Cir. 1992), the same court held that the principle "originally articulated in case involving pro se petitioners" was "equally applicable to petitioners proceeding through counsel." The court found support for this conclusion in the "language and underlying purpose of Rule 3." *Id*.

Similarly, in *Bell v. Mizell*, 931 F.2d 444, 445 (7th Cir. 1991) (per curiam), the Seventh Circuit accepted an application for a certificate of probable cause as the equivalent of a notice of appeal. Noting that the petitioner was represented by a lawyer, the court stated flatly: "we do not think this makes a difference." *Id*. The failure of diligence by an attorney did "not deprive [the defendant] of his appellate rights." *Id*. The Seventh Circuit then followed *Bell* in *Wells v. Ryker*, 591 F.3d 562, 565 (7th Cir. 2010) with respect to a motion for extension of time to request a certificate of appealability, allowing the motion to stand in for a notice of appeal despite the fact that the petitioner was represented.

Finally, in *Rodgers v. Wyoming Att'y Gen.*, 205 F.3d 1201, 1205 (10th Cir. 2000), *overruled on other grounds*, *Moore v. Marr*, 254 F.3d

1235, 1239 (10th Cir. 2001), the Tenth Circuit applied the Supreme

Court's decision in *Smith* to accept a counseled habeas petitioner's

request for a certificate of probable cause as the functional equivalent of

a formal notice of appeal. The court noted that the Supreme Court in

*Smith* "did not remark upon the appellant's pro se status or cite to the

well-established body of case law providing for a liberal view of papers

filed by pro se litigants" as a basis for instructing lower courts to

"liberally construe" Rule 3's requirements. *Id*. The court therefore

concluded that "the filings of counseled habeas petitioners should be

given the same liberal construction as those of pro se petitioners." *Id*.

This Court should give Cruzado the benefit of the liberal

construction of Rule 3 mandated by the Supreme Court for all litigants

and, because his motion requires all the necessary information, accept it

as the functional equivalent of a notice of appeal, giving this Court

jurisdiction.

## II. The Writ of Habeas Corpus Should Issue

This Court should grant Cruzado the writ of habeas corpus

because the trial leading to his conviction was fundamentally unfair.

The SJC's cursory rejection of Cruzado's argument that the admission

of the unredacted recording denied him his constitutional right to due process was an unreasonable application of clearly established federal law. Although the Commonwealth gives a misleading picture of the evidence presented at trial, Cruzado's was in fact an unusually close case in which the erroneous admission of the n-word could have had "a substantial and injurious effect or influence on the jury's verdict." *See Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). None of Cruzado's arguments were waived. This Court should therefore grant him the writ of habeas corpus.

## A. The Supreme Judicial Court unreasonably applied federal law on due process

The SJC's rejection of Cruzado's due process argument was an unreasonable application of federal law. As the Commonwealth recognizes, a "misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief." *Coningford v. Rhode Island*, 640 F.3d 478, 484 (1st Cir. 2011). *See Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (due process principles provide relief for admission of evidence "so unduly prejudicial that it renders the trial fundamentally unfair"). This was what occurred in Cruzado's case, where the admission of the unredacted

recording "so infuse[d] the trial with inflammatory prejudice that it render[ed] a fair trial impossible." *See Gomes v. Silva*, 958 F.3d 12, 24 (1st Cir. 2020) (quoting *Lyons v. Brady*, 666 F.3d 51, 56 (1st Cir. 2012)).

The SJC rejected Cruzado's constitutional due process argument in a single-sentence footnote that relied, without supporting authority, on the inaccurate notion that a defendant's own statements cannot ground a due process claim. *Cruzado*, 480 Mass. at 279 n.2, 103 N.E.3d at 738 n.2. This was an unreasonable application of clearly established federal law, sufficient to warrant habeas relief under 28 U.S.C § 2254(d). The Commonwealth does not address the SJC's footnote at all, but merely repeats the SJC's reference (in their discussion of the non-constitutional issue of Cruzado's state law argument) to the general principal—admitting of many exceptions (*see* PB 33)—that "an opposing party's statements are generally admissible against him or her" (RB 28). *See Cruzado*, 480 Mass. at 278, 103 N.E.3d at 738 (citing Mass. G. Evid. § 801(d)(2)(A) (2018)).

In fact, the admission of the unredacted recording in which Cruzado repeatedly used the n-word in fact amounted to the use of "other acts" evidence to prove propensity, "contrary to firmly

established principles of Anglo-American jurisprudence." *McKinney v. Rees*, 993 F.2d 1378, 1380 (9th Cir. 1993). It also flunked the balancing test, mandated by due process, that is embodied in Rule 403 of the Federal Rules of Evidence: Cruzado's use of the n-word had minimal probative value for the case, but enormous power to turn the jury against him. *See United States v. Wells*, 879 F.3d 900, 930 (9th Cir. 2018) (failure to perform Rule 403 balancing can violate due process). There was no other evidence of a racial motive or animus on the part of Cruzado, nor was there any specific defense argument to which Cruzado's use of the epithet could have been a probative response. Although the court viewed the recording as probative of motive (in part based on a justifiable homicide argument that Cruzado never made) this was not a case where the killing would be otherwise inexplicable. (Add. 46-47.) The government already had a different, more straightforward motive to explain the crime, namely Cruzado's alleged outrage at the victim's homosexual advance.

Meanwhile, the power of n-word to offend the jury and thus prejudice Cruzado was unparalleled. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("No other

word in the English language so powerfully or instantly calls to mind our country's long and brutal struggle to overcome racism and discrimination against African-Americans."); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("Far more than a 'mere offensive utterance,' the [n-word] is pure anathema to African-Americans."); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (N-word is "the most noxious racial epithet in the contemporary American lexicon."). The conclusion is inescapable that the prosecutor—who moved in limine to introduce the unredacted recording over Cruzado's objection, and then referred to his use of the n-word in the climax of both her opening and her closing—sought only to prejudice him by portraying him as a racist to the jury. (Add. 43, 49, 51.)

On this central substantive issue, the Commonwealth cites just two cases, neither of which are binding on this Court or on point with respect to Cruzado's situation. (RB 30-31.) In *People v. Quartermain*, 16 Cal. 4th 600, 628, 941 P.2d 788, 805 (1997), the California Supreme Court did approve of the admission of racial epithets by the defendant in reference to the victim in a murder case, although it overturned the

conviction on other grounds. Crucial to its analysis, however, was the fact that the prosecutor did not "focus attention" on the racial epithets, as the prosecutor did at Cruzado's trial. *Id*. Striking, moreover, is the court's casual observation that racist language is "not so unusual as to inevitably bias the jury against the defendant." *Id*. This may have been correct when the murder in question occurred in 1984, *see id*. at 607, when the defendant was arrested and interrogated in 1987, *see id*. at 612, or when the appellate opinion was written in 1997—but it was not true fifteen years later, when Cruzado was tried. Given the fortunately rapid evolution of social mores around language, *Quartermain's* dated, apodictic pronouncements should not be accepted as evidence of the degree of prejudice that Cruzado suffered from the erroneous admission of the recording.

The Commonwealth also cites to *People v. Mena*, 71 A.D.3d 475, 476, 897 N.Y.S.2d 57, 57-58 (2010), a brief, unsigned opinion from an intermediate appellate court in New York, approving of the admission of the defendant's racially offensive statements to police as more probative than prejudicial. The prosecution used the statements to respond to a specific defense argument to the effect that it was

implausible for the defendant to have shot the victim seven times merely in response to a trivial insult. *Id*. Additionally, "there was a relationship between the statements at issue and epithets used by the assailant during the crime that was sufficient to make the statements relevant to the issue of identity." The evidence against the defendant was also overwhelming, as the "victim's reliable identification of defendant was extensively corroborated by physical evidence and police testimony." *Id*. Setting aside the decision's lack of precedential value, the facts of the case were thus dramatically different from Cruzado's.

The Commonwealth also merely repeats the SJC's vague assurance that a voir dire question was given to mitigate prejudice from the admission of the unredacted recording. (RB 31.) The poorly-formulated question—the *only* measure taken at Cruzado's trial to address the prejudicial effect—not only did not cure the prejudice, but in fact may have exacerbated it. The judge's usual formulation, as considered by the SJC, ran: "The defendant is Hispanic; the alleged victim was African-American. You'll also hear evidence that the defendant allegedly referred to the alleged victim as a nigger. Do you have any feelings, based on race, that might affect your ability to be fair

18

and impartial?" *See Cruzado*, 480 Mass. at 279 n.1, 103 N.E.3d at 738. This failed to distinguish between racial prejudice (which jurors would likely be wary of admitting to) and sensitivity to racial slurs (an understandable reaction). Worse, it placed the issue of Cruzado's use of the n-word at the forefront of the jurors' minds before they even began to hear evidence.

In sum, the admission of the unredacted recording violated Cruzado's due process rights by providing the jury "other acts" evidence that had next to no probative value but enormous potential to prejudice him. The SJC's brief and cryptic rejection of this argument was an unreasonable application of federal due process principles. This evidentiary error rendered his trial "fundamentally unfair," *see Coningford*, 640 F.3d at 484, this court should grant habeas relief.

### B. The Commonwealth ignores the unique factual circumstances, including the total absence of forensic evidence, that made the admission of the recording have a substantial and injurious effect or influence on the jury's verdict

The weakness of the Commonwealth's evidence at Cruzado's trial meant that the admission of the unredacted recording—with its significant potential to offend—could have had a "substantial and

injurious effect or influence" on the jury's verdict. *See Brecht*, 507 U.S. at 637. The Commonwealth claims, without further discussion, that "[t]he record demonstrates the strength of the evidence against [Cruzado], taking into account the witnesses connecting the petitioner to the crime (including those familiar with him), along with the Commonwealth's corresponding cell phone evidence." (RB 35.) This conclusory assertion ignores the unique features of the case. In fact, the Commonwealth's case against Cruzado was *not* strong. There was a plausible third-party culprit for the murder—namely, the victim's boyfriend—and a notable absence of *any* forensic evidence linking Cruzado to the scene of the crime.

The "witnesses connecting the petitioner to the crime" are not named by the Commonwealth, but presumably are Jamie Hernandez (the boyfriend of the victim, Frederick Allen) and Hilda Matiaz (a former girlfriend of Cruzado). Hernandez was himself a suspect— indeed, the initial focus of the police investigation. (T5:106.) He was an alcoholic with a criminal record who had apparently physically abused and robbed Allen in the past and who initially lied to police investigators about the fact of their relationship. (T3:56, 62-63, 106-07;

T5:143-45; T6:15-16.) Hernandez's testimony was all that established
Cruzado's presence in Allen's apartment on the day of Allen's death, as
Cruzado denied to police that he ever went there. (T3:78-81; App. 45-48,
53-54.) Hernandez himself was the last witness to testify to seeing Allen
alive; he left—he claimed—after the two had an argument. (T3:94-97.)
Hernandez then testified that Cruzado later spontaneously confessed to
killing Allen *twice*, once directly to Hernandez's face (to which
apparently Hernandez did not react) and then once again within his
hearing. (T3:141-42, 150-53.) Given that this involved—to say the
least—remarkable coincidences, the jury could have reasonably believed
that Hernandez fabricated his whole account implicating Cruzado to
deflect police attention from himself.

The gist of Matiaz's testimony was likewise that Cruzado had
spontaneously confided in her by phone, some two weeks after Allen's
murder, that he had had a fight with Allen in his apartment, stemming
from Allen's sexual advances. (T3:267-273.) Matiaz was also far from an
unproblematic witness for the Commonwealth, however, with memory
issues on the stand that required the prosecutor to use her earlier grand
jury testimony. (T4:10, 51-69.) She testified that she herself did not

believe what Cruzado told her. (T4:35.) She was not herself questioned by police until March 2011, more than three months after the murder. (T4:13, 17.) At the time of this initial questioning, Matiaz was facing criminal charges, for which she was still on probation at time of trial. (T4:28, 57). Additionally, there was evidence that Matiaz was concerned about the impact of her continuing connection with Cruzado on her relationship with her current boyfriend, whom she had broken up with to return to Cruzado before. (T4:28-30.) She thus had multiple possible motives to adjust or invent her testimony.

The Commonwealth did introduce evidence of five calls made to Matiaz's cell phone between 5:57 P.M. and 6:44 P.M. from Allen's apartment on the day of his death. (T5:95-99.) There was no evidence of Allen calling Matiaz before, and Matiaz testified that she did not know Allen. (T4:25.) Matiaz also did not testify, however, about who made the calls to her or their content. Further calls were then made at 7:05 P.M. and 7:19 P.M. to two numbers in Montreal—presumably by Allen himself, as Allen's ex-husband lived there. (T5:95-99.) Left unexplained was a door to Allen's apartment heard opening and closing heard by his landlord and downstairs neighbor around midnight. (T2:140, T5:95-99.)

The problematic nature of the Commonwealth's evidence must be considered alongside the total absence of forensic evidence linking Cruzado to the scene of the crime. Despite allegations that Cruzado consumed alcohol and drugs, showered, and used the telephone in Allen's apartment, extensive investigation and testing yielded no forensic evidence (including DNA and fingerprint data) that Cruzado had even been present in the dwelling, let alone fought with Allen or handled the belt and vase that caused Allen's death. (T4:202, T6:27-28.) Cruzado was in fact excluded as a source of DNA from samples taken from both the belt and the vase. (T4:202.) Blood on Cruzado's clothing proved to be his own. (T4:143, 196; T5:49-51.)

"At the trial-court level, this case was close. In close cases, there is often a tipping point." *See Foxworth v. St. Amand*, 570 F.3d 414, 436 (1st Cir. 2009). The tipping point here was the admission of the unredacted recorded statement in which Cruzado used a toxic racial epithet, and the prosecution's exploitation of this evidence to portray Cruzado as a racist to the jury. There is at the very least "grave doubt" as to whether this error had "substantial and injurious effect or influence" on the verdict. *See id.* (quoting *Brecht*, 507 U.S. at 637).

## C.  Cruzado's arguments were not waived

Cruzado clearly raised his one substantive claim—that the admission of the unredacted recording violated his due process rights under federal law—in his habeas petition, as he had at all possible prior opportunities. Before the District Court, he argued that he met the standard for habeas relief under AEDPA. The District Court's decision duly quoted the full standard of review from 28 U.S.C § 2254(d)(1), according to which habeas relief is available for a state court "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." (Add. 7). The District Court then concluded that the SJC "reasonably determined" that Cruzado did not meet this standard with respect to his due process claim and that the SJC's "determination that Cruzado's statements held a special probative value was reasonable." (Add. 12-13.)

Given the District Court's analysis of the reasonableness of the SJC decision, the Commonwealth's argument that Cruzado "waived" the argument that the SJC's ruling was an "unreasonable application" of federal law under is wrong. Cruzado raised the merits issue and pointed the court to 28 U.S.C.§ 2254(d)(1). The District Court then

explicitly considered the reasonableness of the SJC's decision. *See Fid.*

*Co-op. Bank v. Nova Cas. Co.*, 726 F.3d 31, 39 (1st Cir. 2013) ("Since the

district court addressed and passed on the issue directly, [plaintiff] is

free to address the issue so raised in this appeal."). There was no

waiver.[5]

The single case relied on by the Commonwealth to claim waiver,

*Maine Green Party v. Maine, Sec'y of State*, 173 F.3d 1 (1st Cir. 1999), is

not a habeas case—or even a criminal case—and is easily

distinguishable. There the plaintiff argued at summary judgment that a

law requiring political parties in Maine to win at least five percent of

the vote in presidential elections in order to maintain official status was

unconstitutional as applied to parties, like itself and most new parties,

---

[5] The Commonwealth also complains, in passing, that Cruzado argued "[f]or the first time on appeal" that the erroneous admission of the recording could have had a "substantial and injurious effect" on the jury's verdict. (RB 34.) The Commonwealth does not argue that this worked a waiver. Besides the fact that Cruzado *did* argue to the District Court that the admission of the recording prejudiced him, consideration of the specific standard articulated in *Brecht*, 507 U.S. at 637, is not an optional, strategic step for habeas petitioners, but a necessary part of the analysis that the federal court must engage in. *See Brown v. Davenport*, 142 S. Ct. 1510, 1517 (2022). The District Court did not reach the question of prejudice only because it denied Cruzado's habeas claim on other grounds.

that lacked resources to fund a national organization. *Id*. at 2. On appeal, the plaintiff then argued that the law was unconstitutional as applied to parties with "a philosophical commitment to operate only on the state and local level." *Id*. at 3. This amounted to "a material shift in a factual position taken by plaintiff as to why it had no national organization" at the time of the election in question. *Id*. at 5. The court viewed this factual question as "potentially crucial" for deciding whether the law, as applied, worked a "direct infringement of the party's core protected activity." *Id*. at 3. The court also noted that the state had failed to brief the new argument on appeal, such that there has been "no real adverse argumentation." *Id*. at 5.

None of this is true here. Cruzado has been consistent at every stage about the facts underlying his claim, and the Commonwealth does not claim otherwise. The AEDPA issue that the Commonwealth claims was waived was in fact considered by the District Court below and has been briefed by the parties on appeal. *Maine Green Party* is thus not relevant to Cruzado's case. This Court should reject the Commonwealth's argument on waiver.

## Conclusion

For the foregoing reasons, Petitioner-Appellant Cruzado requests

that this Court grant him the writ of habeas corpus.

Respectfully submitted,

/s/ Emma Quinn-Judge
Emma Quinn-Judge (1st Cir. #1138229)
Thomas Miller (1st Cir. #1207777)
Zalkind Duncan & Bernstein LLP
65a Atlantic Ave
Boston, MA 02110
(617) 742-6020
equinn-judge@zalkindlaw.com
tmiller@zalkindlaw.com

Date: August 25, 2023

## Certificate of Compliance

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,441 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Emma Quinn-Judge
Attorney for Mario Cruzado
Dated: August 25, 2023